STATE, RESPONDENT, *v.* MATKINS ET AL., APPELLANTS.

(No. 3,065.)

(Submitted February 6, 1912. Decided February 19, 1912.)

[121 Pac. 881.]

*Criminal Law—Grand Larceny—New Trial—Newly Discovered Evidence—Proper Denial.*

New Trial—Newly Discovered Evidence.
   1. Applications for new trials on the ground of newly discovered evidence are not favored by the courts.
Criminal Law—New Trial—Newly Discovered Evidence—Rule.
   2. An application for new trial on the ground of newly discovered evidence, to be of avail, must show (1) that the evidence came to the

knowledge of the applicant since the trial; (2) that it was not through want of diligence that it was not discovered earlier; (3) that it is so material as to probably produce a different result upon another trial; (4) that it is not cumulative merely; (5) that it is not such as will only tend to impeach the character or credit of a witness; (6) that it is reasonably probable that the evidence is within reach of the moving party, and that he can produce it at the trial; and (7) be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence accounted for.

Same—New Trial—Proper Denial.

3. A new trial asked for by defendants, convicted of grand larceny, on the ground of newly discovered evidence, was properly denied where the alleged new testimony of some of the witnesses was only cumulative and impeaching in character, and that of another, *i. e.*, one who claimed to be the guilty party and who was a fugitive from justice, though wholly new and original as well as material, in all probability could not be produced at another trial.

*Appeal from District Court, Rosebud County; Sydney Fox, Judge.*

JAMES MATKINS and Claude Gatliff were convicted of grand larceny, and appeal. Affirmed.

*Messrs. Hathhorn & Brown,* and *Mr. F. V. H. Collins,* for Appellants, submitted a brief.

We submit that the newly discovered evidence is not cumulative and that the court in deciding the motion was mistaken in the law when it says that it is. In *Winfield Building & Loan Assn.* v. *McMullen,* 59 Kan. 493, 53 Pac. 481, the court said: "The fact that the testimony may tend to prove the same issue upon which proof was offered at the trial is not enough to make it cumulative, and whether or not it is cumulative is to be determined from its kind and character rather than from its effect." In *Waller & Waller* v. *Graves,* 20 Conn. 305, it is said: "Evidence of distinct and independent facts of a different character thereof which may tend to establish the same ground for defense, or relate to the same issue, is not cumulative within the rule." (See, also, *Layman* v. *Minneapolis St. Ry. Co.,* 66 Minn. 452, 69 N. W. 329; *Goldsworthy* v. *Town of Linden,* 75 Wis. 24, 43 N. W. 656; *Wilson* v. *Plank,* 41 Wis. 94; *Bullard* v. *Bullard,* 112 Iowa, 423, 84 N. W. 513.)

In behalf of Respondent, there was a brief by *Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendants, charged jointly with grand larceny, were convicted and sentenced to terms in the state prison at hard labor—Matkins to a term of four years, and Gatliff to a term of five years. They moved for a new trial, on the ground, among others, of newly discovered material evidence which they could not with reasonable diligence have discovered and introduced at the trial. They have appealed from the judgment and from an order denying their motion. The only question submitted for decision is whether the trial court abused its discretion in denying a new trial.

The larceny charged was that of a yearling colt. The evidence introduced by the state tends to show that the colt was foaled by a mare belonging to Warren, the prosecuting witness, in April, 1909; that in October following Warren took it from the dam and left it at the ranch of one Edwards, to be fed and cared for during the fall and winter; that it was put in a pasture in care of one Williams, who had charge of the ranch, where it remained until about the middle of December, when it disappeared with other colts belonging to Edwards; and that in the latter part of March, or the early days of April, 1910, it was found in the possession of the defendants at the ranch of Gatliff, where Matkins was employed, with Gatliff's brand upon it. Gatliff resided upon his ranch in Rosebud county, in the same general vicinity in which the Edwards ranch was situated, but several miles away. The Edwards ranch was about thirty-five miles from Forsyth, the county seat, where Warren resided. The controversy in the evidence was as to the identity, or, what is the same thing, the ownership, of the colt. The testimony of Warren and other witnesses was positive and circumstantial as to its birth, history, and physical markings. The defendants, not dis-

puting the fact that Warren had lost a colt by larceny or other-
wise, claimed and endeavored to show that the one found in their
possession had been foaled on the range by a mare belonging to
Gatliff, and had been taken from her during the month of De-
cember, 1909, and driven with other animals to the Gatliff
ranch, to be fed and cared for during the winter.   There was
evidence tending to show that the colt was taken to the Gatliff
ranch before the colt disappeared from the Edwards pasture,
and was there at the time.   There was also evidence tending to
show that it differed materially in its general appearance and
markings from that claimed and described by Warren.   Gatliff
did not offer himself as a witness, though the testimony of other
witnesses showed that at the time of his arrest he claimed owner-
ship of all the colts found in his possession.   No declaration was
then or thereafter made by either defendant, other than a state-
ment made by Matkins to the deputy sheriff at or about the time
of his arrest, as follows: ''You have got me now.   How many
more have you got in this case?''

In support of the motion several affidavits were presented; the
one upon which the defendants chiefly rely being that of one
Fred Cration.   He alleges in detail his acquaintance with the
defendants and the prosecuting witness, a knowledge of the
locality of the Edwards and Gatliff ranches, a knowledge of the
colt described by Warren as the one stolen from him by the
defendants, as well as those claimed by Edwards, his acquaint-
ance with the testimony given by Warren at the trial of defend-
ants, and then proceeds: ''At the time of the alleged larceny of
the said Warren colt and the said Edwards colts, I was residing
on what is known as Sarpy creek in Rosebud county, Montana,
about twelve miles from the Edwards ranch, where said colts
were claimed to have been located, and about eighteen miles from
the ranch of said defendant Gatliff; that I was present at the
time of the preliminary examination of the said Gatliff and Mat-
kins, upon which an information was filed, and upon which
the trial herein mentioned was had in Forsyth, during the latter
part of November, 1910; that I saw the colt claimed by the state

and its officials to have been stolen from the said Warren by the said defendants; that I had seen said colt long previous to the time of said preliminary examination, and while it was in the possession of the defendant Gatliff; that I know personally that the colt mentioned by the said Warren in his testimony was not the colt which was mentioned by the said Warren in his testimony at said trial; that I know personally that the colt which I saw at the time of the preliminary examination and the colt testified to by the witness Warren in said trial was not the property of the witness Warren, and have every reason to believe, and I am practically sure, that said colt was the property of the defendant Gatliff; that, at the time of the trial of said defendants Gatliff and Matkins, I was indicted for grand larceny in Rosebud county, Montana, and did not advise any person or persons of my knowledge in connection with the taking of the Warren colt, for the reason that I considered any such information to be prejudicial to my rights in the case then on trial; that at the time of the trial of Gatliff and Matkins neither of said defendants, nor any counsel connected or employed by them, had any knowledge of the facts known by me in connection with said affair, and could not have obtained the same, until after a dismissal of the case of the state of Montana against myself, for the reasons hereinbefore stated; that there is another reason why I did not give this information previous to the trial of said Gatliff and Matkins, and that is that I knew that neither the said Gatliff or the said Matkins had anything to do with the taking of said Warren colt, and I believed that justice would be done in the premises, and that the said defendants nor either of them would be unjustly convicted; that since the conviction of said Gatliff and Matkins I realize and know that an unjust conviction has been had and two innocent men have been sentenced for a violation of law, of which neither of them are guilty, and I feel that it is my duty to make a statement of the true facts, as they exist, that justice may be done to the said defendants and the state of Montana in the premises; that during the latter part of December, 1909, I personally went to the pasture of Charles C. Edwards mentioned hereinbefore

and where the Warren colt in controversy then was, and took said Warren colt from said pasture, without the assistance or knowledge, so far as I know, of any other person or persons; that, after taking said colt from said pasture, I kept said colt in my possession for a considerable length of time, and then sold, disposed of, and delivered said property to a resident of Rosebud county, Montana; that, to the best of my knowledge and belief, said colt has been in the possession of the person to whom I sold it ever since the time of said sale, and is now in the possession of the person to whom I made such sale, in Rosebud county, Montana, and can be produced at retrial of said action or at any other time, when the person to whom I sold said colt is called upon to produce it; that the sale of said Warren colt was made to the purchaser herein mentioned some time in the spring of 1910, at which time said colt, together with other livestock, was running upon the common range; that, after the sale of said colt and other livestock, said colt was rounded up and delivered by me to the said purchaser, with other livestock, at which time I told and represented to said purchaser that I was the owner of said colt and other livestock, and that no person had any claim upon or to the same; that said purchaser had no means or knowledge, either directly or indirectly of knowing or assuming, that I was not the absolute owner of said colt and other livestock and entitled to transfer and deliver the same; that the name of the purchaser to whom said colt was sold as hereinbefore stated is George Johnson, now residing on Beaver creek, in Rosebud county, Montana. I am making this affidavit freely and voluntarily and simply that justice may be done in the premises, and, if called as a witness at this time or at any other time in the above-entitled cause in the above-named court, I will testify to the same facts as are set forth in this affidavit."

George Johnson states that he has read the affidavit of Cration, and also the transcript of the testimony of Warren as given at the trial, especially that part of it in which Warren gave a description of the colt claimed by him. He then avers: "That during the year A. D. 1910 I purchased from the said Fred

Cration above mentioned a colt which, as I understand it, answers the description given by said Warren in said testimony, and which I know to be the colt mentioned in the affidavit of said Cration as being the colt of said Warren, for that the colt which I now refer to is the only colt purchased by me from said Cration; that I purchased said colt in connection with a saddle-horse, and that the said colt and said saddle-horse were delivered to me by said Cration, and that said colt and said saddle-horse are both now in my possession, and that I am willing to produce said colt on retrial of said cause, or at any other time when the same may be desired for any purpose in connection with this case; that I am familiar with said colt, its appearance and its markings, and that said colt which I know to be the colt referred to in Cration's affidavits answers the description of the colt testified to by the witness Warren above referred to; that at the time of the purchase of said colt and said saddle-horse said Cration represented that he was the sole, true owner of the same, and that he had good right to sell and convey said colt and said saddle-horse, and that no person had any claim upon the same; that I had no knowledge, either directly or indirectly, that his representations were false or untrue, and did not know that said colt was the property of said Warren, or was in any manner connected with the offense charged against Gatliff and Matkins, or that said colt was not the absolute property of said Cration, until after I had read the affidavit of said Cration, heretofore exhibited to me, and that, if called as a witness, I will produce said colt and testify to the facts set forth in this affidavit at any time or place, or in any court where said testimony may be desired.''

Harvey Jones, a witness for the defendants at the trial, repeating in substance the testimony then given, that he knew both the colt described by Warren and the one taken from the possession of the defendants, and that he knew that the latter was altogether different in its description from the former, states: ''That I have read the affidavit of one Fred Cration in the above-entitled cause, in which he says that he took the colt in controversy and afterward sold the same to one George Johnson, and

that I have read the affidavit of George Johnson in this case, in which he says he purchased said colt in connection with a saddlehorse from said Cration, and that I have seen and made careful examination of the colt mentioned in the affidavits of said Cration and said Johnson, and that from my examination of said colt I know that said colt is the colt of said Warren which was the subject matter of the controversy in this cause, and that said colt is not the colt taken from the possession of the defendants Gatliff and Matkins and testified to by said Warren at the trial of this cause in the district court, and that I will, if called as a witness, testify to the facts set forth in this affidavit at any time or place or in any court where said testimony may be desired or required; that I had no knowledge of the facts set forth in this affidavit as to the whereabouts of said colt at the time of the trial of this cause in the district court, and further this affiant saith not.''

The affidavit of A. W. Anderson, also a witness at the trial, is substantially a copy of that of Jones.

Mr. Collins, one of counsel who represented the defendants at the trial, states in his affidavit, in substance, that, as soon as he was employed by the defendants he made a careful investigation of the facts and circumstances in connection with the case and the evidence which could be procured both on the part of the state and the defendants; that, by consultation with the defendants and their friends, he elicited from them all the facts of which he could obtain knowledge in connection with the charge against defendants; that he instructed them to make inquiry pertaining to the issues involved; that he made a thorough personal examination in an effort to ascertain who were the really guilty parties, but without getting possession of any tangible evidence; that he was also the attorney of Fred Cration, who was confined in jail at Forsyth under a charge of grand larceny; that the trial of Cration was set to follow immediately the trial of defendants; that at no time prior to said trial did Cration intimate to him that he had any knowledge of the stealing of the Warren colt; that affiant gained no information of the knowledge

possessed by Cration until long after the trial, and not until the affidavit made by Cration was presented to him; that immediately after the affidavit was made he delivered it to the officers of Rosebud county for such use as they might make of it; that the evidence of Cration could not by any amount of diligence have been discovered before the trial of defendants. After expressing the opinion that the evidence disclosed by the affidavits of Cration, Johnson, Jones, and Anderson would lead to a different result if another trial were granted the defendants, he proceeds: "That since the disclosure of the contents of the affidavit of Cration which is now on file herein to the county attorney and the sheriff of Rosebud county the said Cration was in New Mexico confined in jail for a period of fourteen days, as affiant is informed and believes, and that the officers of Rosebud county then knew of his whereabouts, and were by the officers of the county in New Mexico where the said Cration was confined in jail notified that they held said Cration in confinement, and by reasonable diligence could have apprehended and brought the said Cration to the state of Montana, and that, as affiant is informed and believes, the said Cration is now in New Mexico, and, if a retrial of said cause be granted, that his appearance can be had, that said application for a new trial is not made for the purpose of delay, but that justice may be done in the premises."

Mr. Hathhorn makes a brief statement to the effect that he had no knowledge of the facts stated by Cration and Anderson, prior to the trial of defendants, and then corroborates Mr. Collins in his statement as to the diligence employed by counsel and their clients in the preparation of the case, and concurs in the opinion that a different result would be reached in case a new trial were granted.

The county attorney presented counter-affidavits by Mr. Guy, the sheriff, and Warren, the prosecuting witness. After alleging his official capacity, affiant Guy states: "That said colt was delivered to him, in the city of Forsyth, at or about the time of the arrest of said defendants on said charge. Affiant further states that after said colt was delivered to him, as aforesaid, he

placed the same in a pasture near said affiant's ranch at Rancher, Rosebud county, state of Montana, and that thereafter and before the trial of the above-named defendants in the district court of said Rosebud county, state of Montana, said colt disappeared from the said pasture, and that affiant believes, and has reason to believe, that the same was stolen from said pasture by certain persons, who were interested, on behalf of the defendants in said prosecution.''

Warren states: ''That he is the prosecuting witness in the above-entitled case and the owner of the colt, for the larceny of which the said defendants were convicted; that he has read the affidavit of George Johnson, filed in this case, and is familiar with the contents thereof, and that, on the second day of May, A. D. 1911, he personally went to the ranch and home of the said George Johnson, in Rosebud county, state of Montana, and requested the said George Johnson to show him the colt mentioned and described in said affidavit, and that the said George Johnson at said time and place absolutely declined and refused to allow this affiant to inspect the said colt or to show him where said colt was; that at the said time and place the said George Johnson admitted to this affiant that, after mature reflection, he did not believe that the colt referred to in his affidavit as being the Warren colt, for the larceny of which the above defendants have been convicted, was the same colt that he had purchased from Fred Cration and mentioned and described in his, the said George Johnson's, affidavit, filed herein.''

Applications for new trials on the ground of newly discovered [1] evidence are not favored by the courts. The reason is that the moving party has already had a hearing after ample opportunity to prepare his case, and that, while smarting under defeat and disappointment, he is under strong temptation to manufacture a plausible showing in support of his motion. He may be entirely willing to take the chances of a new trial, but unwilling or afraid to swear to a statement necessary to procure it. It is often the case that the sense of loss arouses him to the diligent activity which he should have put forth before the trial. By

importunity he then interests his friends and through them brings to his support evidence which, if not false, is only cumulative or impeaching in character, and the efficacy of which to produce a different result is speculative and dependent entirely upon the personal characteristics of another jury. The courts [2] have, therefore, formulated rules within which they hold the particular application must be brought, or it will not avail. They are enumerated in *Berry* v. *State,* 10 Ga. 511, substantially as follows: (1) That the evidence must have come to the knowledge of the applicant since the trial; (2) that it was not through want of diligence that it was not discovered earlier; (3) that it is so material that it would probably produce a different result upon another trial; (4) that it is not cumulative merely—that is, does not speak as to facts in relation to which there was evidence at the trial; (5) that the application must be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence accounted for; and (6) that the evidence must not be such as will only tend to impeach the character or credit of a witness. To some of these there may be, and doubtless are, exceptions. For illustration: The cumulative evidence may be so overwhelmingly convincing as to compel the conclusion that to sustain the verdict would be a gross injustice, or the impeaching evidence may demonstrate perjury in the witnesses upon whose evidence the verdict is founded. Again, the evidence may be in the form of written documents which from their character may be conclusive of the rights of the parties. When the evidence is of the character last mentioned, an affidavit is not indispensable, unless to authenticate the writings, if necessary. However this may be, the rules enumerated above were early adopted and have been uniformly observed by this court throughout its history, as appears from the following cases: *Caruthers* v. *Pemberton,* 1 Mont. 112; *Kleinschmidt* v. *Dunphy,* 1 Mont. 118; *Morse* v. *Swan,* 2 Mont. 306; *Garfield M. & M. Co.* v. *Hammer,* 6 Mont. 53, 8 Pac. 153; *Territory* v. *Clayton,* 8 Mont. 1, 19 Pac. 293; *Territory* v. *Bryson,* 9 Mont. 32, 22 Pac. 147; *Leyson* v. *Davis,* 17 Mont. 220, 31 L. R. A.

429, 42 Pac. 775; *State* v. *Gay,* 18 Mont. 51, 44 Pac. 411; *Holland*
v. *Huston,* 20 Mont. 84, 49 Pac. 390; *Baxter* v. *Hamilton,* 20
Mont. 327, 51 Pac. 265; *State* v. *Brooks,* 23 Mont. 146, 57 Pac.
1038; *Elliott* v. *Martin,* 27 Mont. 519, 71 Pac. 756; *In re Col-
bert's Estate,* 31 Mont. 461, 107 Am. St.-Rep. 439, 3 Ann. Cas.
952, 78 Pac. 971, 80 Pac. 248; *State* v. *Wakely,* 43 Mont. 427, 117
Pac. 95. To these rules may properly be added still another,
*viz.,* that it must appear to be within reasonable probability that
the evidence is within reach of the moving party and that he can
produce it at the trial.

The affidavits of Johnson, Anderson, and Jones, considered
apart from that of Cration, present evidence which is only cumu-
lative and impeaching in character; for it relates only to the
[3] identity, and therefore the ownership, of the colt in contro-
versy, and contradicts the claim made by Warren. The facts
disclosed in them assume the character of new original evidence
only when taken in connection with the disclosures made by
Cration; for their knowledge of the history and ownership of
the Johnson colt they obtained only through Cration's affidavit.
Therefore, if the evidence of Cration could not be obtained to be
used at another trial, such other trial would be but a reinvestiga-
tion of the issue already tried, upon the same evidence, supple-
mented by such cumulative and impeaching facts as they would
be permitted to testify to touching the identity of the colt now
in the possession of Johnson.

The facts disclosed by Cration constitute wholly new and
original evidence. They are also material. As corroborative of
his testimony, could it be had, the statements of Johnson, Ander-
son, and Jones would assume the form of new and original evi-
dence. If Cration had surrendered himself to the authorities
of Rosebud county and submitted to arrest for his alleged lar-
ceny, it would be within the power of the defendants to produce
his evidence, for, though a convicted felon, his testimony would
be competent. The fact that he had surrendered himself for
punishment, in order to protect the defendants from injustice,
would furnish well-nigh a demonstration of the truth of his state-

ments. In any event, his evidence would under these circumstances be strongly persuasive of the innocence of the defendants. But all the circumstances point to the conclusion, not only that his story is probably false, but also that his presence as a witness will in all probability not be obtainable even if a new trial were granted. His affidavit was made on December 14, 1910. It was filed with the clerk on April 27, 1911, about four months and a half later. Exactly when the authorities of Rosebud county gained knowledge of it does not appear. That he was not arrested in itself indicates that he was then out of the jurisdiction, probably beyond the reach of the authorities, and intended to remain so.

It would seem that counsel for defendants, if satisfied of the truth of his statement, would have exerted every effort to have had Cration arrested, and thus detain him within the jurisdiction, so that his evidence could be made available. Upon the face of it, the affidavit of Cration seems to have been made, not to serve the ends of justice, but in order to secure the defendants a new trial and thus give them another chance, but without the intention of serving them further, by being present or where they could secure his deposition; for, though he avers that he makes the affidavit freely and voluntarily in order that justice may be done, and that if called as a witness he will testify to the facts, it is impossible to believe that he then and there had, or now has, any intention voluntarily to come into the jurisdiction or disclose his whereabouts to the state authorities. It is therefore altogether improbable that his evidence can be obtained, even if a new trial were granted. Doubtless this consideration, as it ought, greatly influenced the trial judge in reaching the conclusion that the motion should be denied. Besides, while the affidavits of counsel show diligence so far as they are concerned, the defendants themselves have failed to deny knowledge of the facts stated by Cration. It is entirely possible that, while they did not commit the larceny of the Warren colt, they may have had such knowledge of it as to require them to speak. They should at least have gone so far as to deny such knowledge, and thus have shown that they

themselves have not been guilty of a lack of diligence.    They should, incidentally, also have disclaimed their own guilt.    Up to this point in the case the defendant Gatliff has never seen fit to speak on this subject, except in his plea of not guilty.    Nor has Matkins, except so far as a disclaimer may be predicated upon his assertion that he knew that the colt found at the Gatliff ranch was the property of Gatliff.    So far as we can see, the Cration affidavit is probably the result of an understanding between him and the defendants—a clever device by which he seeks to aid them to escape what appears to be a proper conviction.

Upon the showing made, the motion was properly denied.    The judgment and order are therefore affirmed.

*Affirmed.*

Mr. Justice Smith and Mr. Justice Holloway concur.