STATE, RESPONDENT, *v.* BROELL, APPELLANT.

(No. 6,623.)

(Submitted April 7, 1930.   Decided April 19, 1930.)

[286 Pac. 1108.]

*Mr. James F. O'Connor*, for Appellant, submitted a brief and argued the cause orally.

*Mr. L. A. Foot*, Attorney General, and *Mr. S. R. Foot*, Assistant Attorney General, for the State, submitted a brief; *Mr. S. R. Foot* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

By information duly filed, defendant Carl Broell and his brother William were jointly charged with the larceny of three hogs, the property of Laurent Sarrazin, in Park county, and, on their pleas of not guilty, were jointly tried. At the close of the state's case, verdict in favor of William Broell was directed and the case dismissed as to him. Evidence on behalf of Carl Broell was then adduced and, both sides having rested, this defendant moved for a directed verdict; the motion was denied, and thereafter the jury returned a verdict of guilty of grand larceny as charged, and judgment of conviction followed. Defendant moved for a new trial, the formal notice thereof reciting all the grounds permissible under the statute

(sec. 12048, Rev. Codes 1921) and following the exact words thereof. The motion, in so far as it is based on "new evidence," is supported by affidavits. The motion was overruled.

Defendant has appealed from the judgment of conviction and from the order overruling his motion for a new trial. But two specifications of error are made: The first is predicated on the denial of the motion for a directed verdict; the second on the overruling of the motion for a new trial.

1. It is urged that a verdict should have been directed, as the only evidence of the commission of the crime and defendant's connection therewith was that given by an accomplice, or, if additional evidence was adduced, it was insufficient to meet the requirements of the law with reference to corroboration of the evidence of an accomplice.

Direct evidence of defendant's guilt was given by Louis Nelson, admittedly an accomplice, who with one William Harvey, had been committed to the penitentiary, after the hogs in question were stolen, on pleas of guilty to a burglary charge, in return for which Nelson was assured he would not be prosecuted on the hog stealing charge.

Nelson testified that on the night of May 14, 1929, he and Harvey drove to the Broell ranch, which was about seven miles from Livingston, Park county, and fifteen miles from the place where the hogs were stolen. Harvey remained at the ranch, and Nelson, in company with the defendant, drove in defendant's Ford truck to "a place on the side road from the highway," where they killed three red hogs, dragged them some distance to where the truck was parked, loaded them in, and drove back "fifteen or twenty miles" to the Broell ranch. In their absence a fire had been built under a scalding vat, and there defendant Nelson, Harvey and William Broell proceeded to dress the hogs for market. All this happened between 10 P. M. and some time after midnight. The witness further testified that on the following morning he and defendant loaded the carcasses into the Ford truck, drove to Livingston, and there defendant sold them to the proprietor of a meat market.

Nelson and Harvey drove to the Broell ranch in a Nash sedan. On cross-examination the witness denied that he had heard any conversation between Harvey and Carl Broell relative to the payment by the former of money owing to the latter, or any agreement that Carl Broell was to be paid for hauling the hogs to market.

Had Nelson not been an accomplice, there can be no question but that the foregoing evidence would sustain the verdict and judgment; but section 11988, Revised Codes 1921, declares: "Conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid * * * of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof." Counsel for defendant contends that, eliminating Nelson's testimony, there is no proof of the *corpus delicti* or of defendant's connection with the offense charged.

█ The *corpus delicti* may be proved by circumstantial evidence. (*State* v. *Ducolon,* 60 Mont. 594, 201 Pac. 267.) While, as will later appear, the complaining witness did not state categorically that his hogs were stolen or that he had not either sold or given them away, his testimony clearly shows that they were taken without his knowledge or consent and without right or authority, and, by the defense interposed, it is in effect conceded that the hogs sold were stolen from the complaining witness; the only question raised being as to whether or not █ this defendant was a party to that crime. Further, the corroborating evidence required need not be direct, but may be circumstantial. (*State* v. *Ritz,* 65 Mont. 180, 211 Pac. 298.)

As to the requirement of the statute above quoted, it is not necessary that the accomplice be corroborated as to every fact to which he testifies, or that the independent evidence be sufficient, of itself, to establish the defendant's guilt. (*State* v. *Slothower,* 56 Mont. 230, 182 Pac. 270.) It need not connect the defendant with the commission of the crime, but is sufficient if,

unaided by the testimony of the accomplice, it *tends* to do so, and in determining its sufficiency for that purpose, all of the evidence in the record, other than that of the accomplice, is to be considered, including the evidence of the defendant himself. (*State* v. *Bolton*, 65 Mont. 74, 212 Pac. 504; see, also, *State* v. *Yegen*, 86 Mont. 240, 283 Pac. 210.)

Entirely disregarding Nelson's testimony, the record discloses the following facts: On the evening of May 14, 1929, Laurent Sarrazin owned four red hogs which he kept at a place approximately seven miles from Livingston, in the opposite direction from the Broell ranch. On the morning of the 15th he discovered that three of these hogs had been killed, blood marking the place of slaughter, and dragged some distance to where automobile tire tracks showed in soft earth. From the fact that these tire tracks were narrow and those made by the rear tires larger than those made by the front tires, witnesses deduced that the vehicle in which the hogs had been transported was a Ford truck. On the morning of the 15th this defendant and Nelson drove into Livingston in a Ford truck in which they had the carcasses of three hogs. Defendant Carl Broell sold the carcasses to the butcher and received in payment a check made payable to him. Defendant owned and kept hogs on his ranch. On investigation at the Broell ranch, the sheriff discovered recently removed red hog hair in and around the scalding vat and, on calling it to the attention of William Broell, was informed that they had recently dressed "an old boar." This conversation was not denied by William Broell when on the stand, nor was there any attempt made to show that the hair in question was taken from any other hogs than those belonging to Sarrazin, all of which were sows.

This independent information shows, circumstantially in part and directly in part, that the hogs were stolen as alleged, and that, as the defendant had them in his possession almost immediately after the theft and disposed of them as his own, he either stole them himself or received them from someone shortly after they were stolen. His possession and

exercise of dominion over the property recently stolen, unexplained and considered in the light of surrounding circumstances, at least "tended" to connect him with the commission of the offense, regardless of whether or not the attending circumstances were sufficient, coupled with such possession and dominion, to warrant a conviction on a charge of larceny or of receiving stolen property. (See *State* v. *Keithley*, 83 Mont. 177, 271 Pac. 449.)

The following statement from *State* v. *Evans*, 60 Mont. 367, 199 Pac. 440, 442, is pertinent: "Although there was not any direct and positive evidence that the defendant stole the animal described in the information, the possession by the defendant of the meat of the animal and his exercise of ownership over it under the circumstances here indicated, furnish a basis for the inference that he killed the animal, and the evidence was sufficient to justify the court in submitting it to the jury."

The question here is, not whether the evidence now considered was sufficient to warrant a conviction, but merely as to whether it was such as *"tends"* to connect the defendant with the crime shown by the testimony of the accomplice and thus to warrant the submission of all of the evidence, including that of the accomplice, to the jury. The answer to this question depends upon the determination of the further inquiry whether the incriminating circumstances were explained away.

The defendant and his brother William attempted to overcome the circumstantial evidence set out above, to refute the testimony of Nelson, and to establish an alibi for the defendant for the night of the larceny. They testified that on the night of the 14th the defendant, William Broell, and his wife and children attended a picture show at the Orpheum Theater in Livingston; that they sat immediately in front of one Gene Carter, his wife and children; that they did not leave the theater until 11 o'clock, and then had to take their car to a garage where some work was done on it. Neither Mrs. Broell nor Mrs. Carter was called to substantiate their story, and, while Carter and the garageman testified as to the circum-

stances related, neither could tell whether they transpired on the night of the 14th or 15th, and no attempt was made to show circumstances fixing the date, such as a record of the work done on the car or the character of the night.

The testimony of defendant and his brother was that they arrived at the ranch about midnight and went to bed, and thereafter Nelson and Harvey arrived with the hogs in the Nash car; that they asked Nelson if the hogs belonged to him and why they were killed at night, to which he replied that he and Harvey owned the hogs and that they had had trouble with the car. Both testified that Nelson had theretofore requested the use of the vat at a future time, stating that he and Harvey owned hogs.

If Nelson and Harvey stole the hogs, using the Nash car, as contended by the Broell brothers, the state's witnesses were mistaken as to the nature of the tracks made by the car into which the hogs were loaded; at least, we have here a conflict in the testimony to be resolved by the jury.

In explanation of Carl Broell's transportation of the hogs and his exercise of dominion over them, the brothers testified that Nelson did not want to haul them in the Nash car for fear of breaking the glass—although, if their story is true, he had hauled the hogs fifteen miles in that car the night before—and therefore agreed to pay Carl Broell $5 for taking them into Livingston, a distance of but seven miles; further, that Harvey was owing defendant an old account and agreed to pay him $20 on it out of the hog money. This testimony, if believed, would account further for Carl Broell's retention of approximately half of the receipts from the sale which, otherwise, leaves the impression that he and Nelson split the amount received from the larceny. The defendant did not explain why, if the hogs belonged to Nelson and Harvey, Nelson, who was with him, was not permitted to sell them, collect the money, and pay him what he had coming; he did not intimate that he did not trust Nelson to do so.

A further peculiar circumstance is that Harvey, desiring to get to Livingston, with his own car at the Broell ranch, did not ride in with Carl Broell and Nelson, nor drive his own car; instead, he is said to have paid William Broell $5 for taking him the seven miles to Livingston. This was explained by saying that Harvey had but one arm and could not drive his car; yet, in explanation of the "old account," the defense stated that defendant had met Harvey out on the road with a loose connecting rod and hauled his car in; clearly, the impression is left that Harvey was then driving the identical car.

The jury were at liberty to believe or disbelieve the explanations given by the defendant and his brother, and, as pointed out, certain facts and circumstances connected therewith and contained therein may well have cast doubt upon the truth of the entire story of the defense. Whether the explanations were sufficiently satisfactory to raise a reasonable doubt in the minds of the jurors as to defendant's connection with the offense charged was a question for the jury's determination, not for that of the court on motion for directed verdict. We have no means of ascertaining from the cold record what was the demeanor of these witnesses on the stand or their manner of testifying—important factors in judging the credibility of witnesses and the weight to be given to their testimony—and, therefore, with the exercise of the jury's discretion in this matter we cannot interfere. (*State* v. *Maloney,* 85 Mont. 138, 277 Pac. 961.)

While the defendant was not bound to prove the truth of his explanations and the presumption arising from the possession of recently stolen property is overcome if the explanation leaves the matter in doubt (*State* v. *Trosper,* 41 Mont. 442, 109 Pac. 858), the jury may disregard the explanation, even though uncontradicted and unimpeached, if it appears to them inherently improbable when examined in the light of other facts and circumstances appearing on the trial. (*State* v. *Willette,* 46 Mont. 326, 127 Pac. 1013.)

When therefore the trial court was faced with a motion for a directed verdict, it had before it corroborating circumstances and facts sufficient to meet the requirements of the statute and did not err in denying the motion. This being so, and the jury having manifestly disbelieved the story told by the defendant and his brother, the testimony of the accomplice was before the jury for consideration along with the other facts and circumstances shown, and the fact that Nelson was an accomplice, had been convicted of a felony, and was not to be prosecuted for the larceny of the hogs, did not affect the admissibility of his testimony or its consideration by the jury, but merely his credibility and the weight to be given his testimony—questions for the determination of the jury alone. (*State* v. *Geddes*, 22 Mont. 68, 55 Pac. 919.)

After all, in a criminal case, the liberty and the rights of the defendant based on fact conditions are largely in the hands of the jury, and when that body has spoken, on a record showing facts sufficient to justify the verdict, if believed by the jurors, the courts are powerless to grant relief from the action of the jury. In the instance of testimony given by an accomplice, the extent to which the legislature has deprived the jury of its great power in such a case is merely that there shall be some independent evidence which "tends" to connect the defendant with the commission of the offense; if such evidence is found in the record and it, with the testimony of the accomplice, is sufficient to warrant a verdict of guilty, although the evidence as a whole is weak, the trial court is not authorized to take the case from the jury, nor may this court interfere with the action of the constitutional forum for the settlement of the matter. The evidence, as a whole, is sufficient to sustain the verdict.

2. The motion for a new trial was based upon two grounds: First, the alleged error of the court already discussed; and, second, newly discovered evidence.

In support of the second ground of the motion, defendant filed the affidavits of himself, his counsel and William

294

Harvey, to the effect that Harvey's name was indorsed upon the information against defendant as a witness for the state; that Harvey was returned to Livingston from the penitentiary, with Nelson, to be used as a witness against defendant, but was not placed on the stand; that in a conversation with the county attorney after the state had rested, counsel for defendant was advised that Harvey had refused to testify at all and it would have been useless to call him. For this reason, states counsel, he did not talk with Harvey nor attempt to use him as a witness for the defense; that after his conviction, defendant was placed in the county jail and there had a conversation with Harvey in which the latter stated that he had told the county attorney that, if called, he would testify that he and Nelson stole the hogs. Harvey's version of the matter, as related in his affidavit, is that given by the defendant on the stand.

The trial court has discretion to grant a new trial on the ground of newly discovered evidence, when the defendant shows that "he could not, with reasonable diligence," have discovered and produced the evidence on the trial. (Sec. 12048, subd. 7, Rev. Codes 1921.) Here, defendant and his counsel accepted the statement of the county attorney without attempting to verify it by an interview with Harvey, who was known to them during the trial to be in the county jail in the city of Livingston. It is reasonably clear that Harvey's evidence could have been readily secured during the trial. We are of the opinion that there was not such a showing of due diligence as will now warrant us in reversing the order of the trial court as an abuse of discretion.

This court sits only as a reviewing tribunal, not as a court of original jurisdiction or one "clothed with authority to try the motion *de novo*." (*State* v. *Schoenborn*, 55 Mont. 517, 179 Pac. 294, 295.) "Applications for new trials on the ground of newly discovered evidence are not favored by the courts. The reason is that the moving party has already had a hearing after ample opportunity to prepare his case, and that, while smarting under defeat and disappointment, he is under

strong temptation to manufacture a plausible showing in support of his motion * * * ; it is often the case that the sense of loss arouses him to the diligent activity which he should have put forth before the trial." (*State* v. *Matkins,* 45 Mont. 58, 121 Pac. 881, 885; *State* v. *Prlja,* 57 Mont. 461, 189 Pac. 64.)

Further, as both this defendant and William Broell testified as it is now shown Harvey would testify, the "new evidence" comes under the rule that a new trial will not be granted where the new evidence is merely cumulative. (*State* v. *Van Laningham,* 55 Mont. 17, 173 Pac. 795.)

It might be that, as Harvey's testimony would incriminate him instead of this defendant, the motion might come within one of the exceptions to the cumulative evidence rule stated in *State* v. *Matkins,* above, and thus warrant a reversal, were it not for the fact that the court was justified in denying the motion on the ground of lack of due diligence.

For the reasons stated the judgment and order are affirmed.

ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

MR. CHIEF JUSTICE CALLAWAY, being absent, did not hear the argument and takes no part in the foregoing decision.