STATE, Respondent, *v.* SLOTHOWER et al., Appellants.

(No. 4,414.)

(Submitted June 30, 1919.   Decided June 30, 1919.)

[182 Pac. 270.]

*Criminal Law—Grand Larceny—Accomplice—Accessory—Instructions—Circumstantial Evidence—Sufficiency — Judicial Notice.*

Grand Larceny—Accessory—Accomplice—Instructions.
  1.  An instruction that an accessory is not an accomplice *held* correct.
  [As to who are accomplices, see note in 132 Am. St. Rep. 273.]

Same—"Accessory"—Definition.
  2.  The term "accessory," defined by section 8120, Revised Codes, refers exclusively to an accessory after the fact.

Same—"Accomplice"—Definition—Jury Question.
  3.  To constitute a witness for the state an "accomplice" he must have entertained a criminal intent common with that which moved the defendant to commit the crime with which he stood charged, or, not having been present at its commission, must have advised and encouraged it, and whether he did either was a question for the jury under appropriate instructions.

Same—Accomplice—Corroboration—Sufficiency.
  4.  It is not necessary that an accomplice be corroborated upon every fact to which he testifies, or that the independent evidence required by section 9290, Revised Codes, be sufficient of itself to establish defendant's guilt or connect him with the commission of the crime; if it tends to so connect him it is sufficient.

Same—Evidence—Sufficiency.
  5.  Evidence *held* sufficient, independently of that of an alleged accomplice, to raise a fair inference that defendant was connected with the commission of the larceny with which he stood charged.

Same—Evidence—Admissibility—Failure to Object—Effect.
  6.  Where gloves obtained from a store were admitted without objection for the purpose of comparing them with one found at the place of the commission of the crime, and defendant did not request their withdrawal upon failure of the county attorney to introduce the one found, he was in no position to complain of their introduction.

Same—Conflict in Evidence—Appeal.
  7.  Where the evidence is in irreconcilable conflict and there is substantial evidence to support verdict, it will not be disturbed on appeal.

Same—Circumstantial Evidence—Sufficiency.
  8.  Where a conviction is sought upon circumstantial evidence, the criminatory circumstances proved must be consistent with each other, and point so clearly to the guilt of the accused as to be inconsistent with any other rational hypothesis.

Same—Evidence—Moon's Changes—Judicial Notice.
  9.  Courts may, under section 7888, Revised Codes, take judicial notice of the time of the moon's changes.

*Appeal from District Court, Fergus County; Jack Briscoe, Judge.*

J. H. SLOTHOWER and others were convicted of grand larceny, and from the judgment of conviction and from an order denying them a new trial, they appeal. Affirmed.

*Mr. John A. Coleman,* for Appellants, submitted a brief and argued the cause orally.

*Mr. C. S. Ford,* Attorney General, and *Mr. Otto A. Gerth,* Assistant Attorney General, submitted a brief; *Mr. Gerth* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendants were convicted of the crime of grand larceny, and appealed from the judgment and from an order denying them a new trial.

William McCollum, a witness for the state, testified that on the evening of February 13 of this year he and his wife visited the home of defendant Slothower; that the four defendants were present; that after supper the defendants prepared to leave; that one of them remarked that they intended to have pig liver for breakfast; that they invited him to accompany them, but he declined; that they left in an automobile driven by defendant Anderson, taking with them a rifle; that as they left he inquired whether they wanted him to have water heated, and received a negative reply; that later he and his wife went to their home, but that he immediately returned to Slothower's place and waited for some time; that shortly after midnight the four defendants returned with three hogs which had just been killed; that one of the four stated that they had procured the hogs from Harry Wight's ranch; that defendant Slothower complained that he had lost one of his gloves and the cleaning rod for his gun, probably in Wight's hogpen; that the five men then heated water and dressed the hogs, and that he (McCollum)

received a portion of the meat, which he took to his home and concealed. When asked whether he had informed the county attorney of the killing of the hogs, he replied: "I think so, and I claim I took part in it too."

By instruction 21 the court defined the term "accomplice" substantially in the language approved by this court in *State ex rel. Webb* v. *District Court,* 37 Mont. 191, 15 Ann. Cas. 743, 95 Pac. 593, and informed the jury that it was a question of fact for their determination whether McCollum was an **[1, 2]** accomplice. By instruction 22 the court defined an "accessory," and advised the jury that an accessory is not an accomplice. The term "accessory," defined by section 8120, Revised Codes, refers exclusively to an accessory after the fact. (*State* v. *De Wolfe,* 29 Mont. 415, 74 Pac. 1084.) That instruction 22 correctly states the law is not debatable. (*State ex rel. Webb* v. *District Court,* above; *State* v. *Spotted Hawk,* 22 Mont. 33, 55 Pac. 1026; *People* v. *Coffey,* 161 Cal. 433, 119 Pac. 901, 39 L. R. A. (n. s.) 704.) But appellants contend that the testimony of McCollum establishes the fact that he was an accomplice, and the court should have instructed the jury to that effect, instead of giving the instructions above. So far as disclosed by the record, a peremptory instruction was not requested; but, aside from this technical objection to the position now assumed, we think the court properly submitted the question to the jury.

To constitute McCollum an accomplice, he must have entertained a criminal intent common with that which moved the **[3]** defendants to kill the hogs and appropriate them to their own use; and, since he was not personally present joining in the larceny, he must also have advised and encouraged its commission. Whether he entertained the criminal intent, and whether he advised and encouraged the defendants, were questions properly for the determination of the jury under appropriate instructions. (1 Am. & Eng. Ency. Law, 393; 1 R. C. L. 158; 12 Cyc. 449; *People* v. *Curlee,* 53 Cal. 604; *People* v. *Compton,* 123 Cal. 403, 56 Pac. 44.)

If McCollum was found to be an accomplice, the question then [4] arises: Was he corroborated by other evidence which in itself and without the aid of his testimony tends to connect the defendants with the commission of the crime? (Sec. 9290, Rev. Codes.) It is not necessary that the accomplice be corroborated upon every fact to which he testifies. (1 Am. & Eng. Ency. Law, 402; *People* v. *Kuntz,* 73 Cal. 313, 14 Pac. 836.) Neither is it necessary that the independent evidence shall be sufficient of itself to establish defendants' guilt (*State* v. *Stevenson,* 26 Mont. 332, 67 Pac. 1001), or connect them with the commission of the crime (*State* v. *Calder,* 23 Mont. 504, 59 Pac. 903). It is sufficient if it *tends* to connect them with the commission of the larceny. (*State* v. *Calder,* above; *People* v. *Ogle,* 104 N. Y. 511, 11 N. E. 53.)

The *corpus delicti*—the fact that the larceny had been committed—was established beyond question by the testimony of [5] Wight. Mrs. McCollum testified that she was present at Slothower's place on the evening of February 13; that the four defendants were present; that about 8 P. M. they left in an automobile; that one of them remarked that they were going to have pig's liver for breakfast; that they invited her husband to go with them, and, when he declined, they remarked that there were enough of them anyway. The testimony of employees of the Moore Mercantile Company disclosed that defendant Slothower purchased a pair of gloves on February 11, and Wight testified that he found a glove and a cleaning rod for a gun in his hogpen on the morning of the 14th. J. W. Stevenson, a constable, testified that about February 18 he went to Slothower's place with a search-warrant; that he notified defendant Slothower of his mission and made a search of the premises; that he asked Slothower if there was any meat in his cellar, and received an answer in the negative; that he then searched the cellar and found a recently butchered hog, excepting the head; that Slothower said he had purchased the hog from George Fraser about a week before. C. H. Kelly, who accompanied Stevenson, testified to substantially the same things. To Roy

Ross, Slothower said that the hog found in his cellar was a stray. A deputy sheriff and Wight testified to trailing the automobile for two miles from the Wight place in the direction of defendant Slothower's home, by the marks of blood upon the snow-covered ground, until they reached a point where the snow disappeared. The testimony of Wight, together with that of Kelly and Stevenson, shows that the carcasses found in the possession of Slothower and McCollum and in a strawstack near Slothower's place corresponded in size and description with the hogs stolen from Wight. In his own defense, Slothower testified that the hog found in his cellar was one he had purchased from à Mr. Harr, but admitted that he might have told Kelly and Stevenson that he bought it from Fraser, and that he might have told Ross that it was a stray. We think it is a fair inference from this evidence, independently of the testimony of McCollum, that these defendants were connected with the commission of the larceny. The evidence in its entirety is amply sufficient to sustain the verdict and judgment. Indeed, if the witness McCollum is to be believed, they admitted their guilt.

Complaint is made of the ruling of the court admitting in **[6]** evidence certain gloves from the store of the Moore Mercantile Company, presumably for the purpose of comparison and as tending to prove that the glove found in Wight's hogpen belonged to defendant Slothower. The gloves were admitted without objection, and defendants, failing to request the court to withdraw them when the county attorney finally neglected to offer in evidence the glove found by Wight, are not now in position to complain.

The defendants Eaden and Anderson testified that they spent **[7]** the night of February 13 with Anderson's parents in Moore, and remained there until after noon on the 14th. In this they were corroborated by Anderson's parents. In rebuttal the state called J. H. Springer, who testified that on the forenoon of the 14th he saw and talked with Eaden and Anderson at his (Springer's) ranch, nine miles from Moore, where they were then living, and he was able to fix the time definitely by a memo-

randum he had then made.    The jury were called upon to determine the credibility of these witnesses, and by their verdict they indicated that they chose to believe McCollum, Mrs. McCollum, and Springer, rather than Eaden, Anderson and Anderson's parents.    The evidence was in irreconcilable conflict, but, since there is substantial evidence to support the verdict, we cannot substitute our judgment upon the weight of the evidence for that of the jury.

By instruction No. 2 the court defined circumstantial evidence and continued: ''The rule of law is that, to warrant a conviction on a criminal charge upon circumstantial evidence alone, the circumstances should be such as to produce the same degree of certainty as that which arises from direct testimony, and sufficient to exclude all reasonable doubt of the party's guilt.''

At the instance of defendants the court gave instruction 28, [8]  defining ''circumstantial evidence,'' and stating the rule by which the sufficiency of circumstantial evidence is to be tested, as contended for by defendants.    In *State* v. *Woods*, 54 Mont. 193, 169 Pac. 39, the rule is stated tersely as follows: ''Where a conviction is sought upon circumstantial evidence, the criminatory circumstances proved must be consistent with each other, and point so clearly to the guilt of the accused as to be inconsistent with any other rational hypothesis.''    The rule as thus stated has been recognized and approved for so many years that there cannot be any excuse for an attempt to deviate substantially from it, or to smother the essential principle in a multitude of meaningless words.

Neither instruction 2 nor 28 is technically accurate, but neither one of them is fundamentally erroneous so far as it goes.    There is not any substantial conflict between them; on the contrary, they may be construed together and harmonized in all essential particulars.

The defendants denied that they were together on the evening of February 13, but admitted that they were all at Slothower's place one evening in February, when Slothower and Anderson secured some potatoes from a neighbor, Knute Skajeveland.

They testified that it was the evening of the 8th. To sustain the state's theory that it was the evening of the 13th before the larceny was committed, Skajeveland was called as a witness. He [9] testified that it was the evening before the full moon in February, but was unable to fix the date more definitely. The court, after first examining an almanac, instructed the jury that "the moon was full the night of February 14, 1919." It is urged that the court was not authorized to take judicial notice of the time of the moon's changes, but in this appellants are in error. (Sec. 7888, Rev. Codes; *State ex rel. Teague* v. *Board of Commissioners*, 34 Mont. 426, 87 Pac. 450; *People* v. *Mayes*, 113 Cal. 618, 45 Pac. 860; 15 R. C. L. 1100.) In *State* v. *Morris*, 47 Conn. 179, the court said: "The time of the rising or setting of the sun on any given day belongs to a class of facts, like the succession of the seasons, changes of the moon, days of the month and week, *etc.*, of which courts will take judicial notice. The almanac in such cases is used, like the statute, not strictly as evidence, but for the purpose of refreshing the memory of the court and jury."

We find no reversible error in the record. The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE COOPER concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.

Motion for rehearing denied September 16, 1919.