STATE, RESPONDENT, *v.* DIEDTMAN, APPELLANT.

(No. 4,398.)

(Submitted March 3, 1920.   Decided May 8, 1920.)

[190 Pac. 117.]

*Criminal Law — Sedition — Jury — Challenges — Witnesses — Hearsay—Cross-examination—Collateral Matters—Evidence— Issues—Instructions.*

Criminal Law—Selection of Jury—Peremptory Challenge by Trial Judge— What may Constitute.
 1.   Where a juror in a criminal prosecution had shown himself possessed of the statutory qualifications for jury service, a suggestion by the trial judge to the county attorney that if he would challenge the juror the challenge would be sustained, amounted to the exercise of a peremptory challenge—a right not possessed by such judge—was prejudicial error.

Same—Jury—Challenge for Cause may be Waived.
 2.   A challenge for cause may be waived, and is waived, unless availed of at the proper time.

Same—Selection of Jury—Right of Defendant.
 3.   A defendant is entitled to insist that the jury shall be selected according to law.

Same—Witnesses—Testimony to Support Character—When Inadmissible.
 4.   Testimony introduced in a prosecution for sedition, to support the good character of the state's chief witness before it had been impeached, was inadmissible under section 8026, Revised Codes.

Same—Reputation of Prosecuting Witness—Hearsay.
 5.   Testimony that the federal Department of Justice and the attorney general of the United States had investigated and passed favorably upon the record of a state witness, an ex-convict and alien enemy employed to detect violations of the sedition statute, was inadmissible as hearsay.

Same—Appeal and Error—Harmless and Harmful Error—How Determined.
 6.   No judgment will be reversed for technical errors or defects appearing in the record which do not affect the substantial rights of the complaining party, the question whether the particular error shall be classed as harmful or harmless depending upon the peculiar facts and circumstances in the particular case under review.

Same—Witnesses—Cross-examination—Impeachment on Collateral Matter.
 7.   Where a character witness for defendant had testified that the latter's reputation for honesty and integrity was good, it was error to require him to answer the question on cross-examination whether on previous occasions he had not used language indicating his pro-German sympathies; a witness not being subject to impeachment upon a collateral matter brought out on cross-examination.

Same—Cross-examination—Collateral Matter—Test.
 8.   The test by which to determine in a criminal prosecution whether a question asked a witness of defendant on cross-examination relates

to a collateral matter on which the witness' answer is conclusive, is whether the state could properly have introduced evidence on the subject in its case in chief.

Same—Witness Testifying from Memorandum—Cautionary Instruction.
9.   *Held,* that where a witness testified to seditious language used by defendant, from a memorandum extended by the former from notes made by him when the statements were said to have been made, refusal to instruct the jury to receive such testimony with caution was error, defendant having been entitled to such an instruction under section 8020, Revised Codes, as a matter of absolute right.

Same—Detectives—Cross-examination—Undue Restriction.
10.   Where the state's principal witness in a prosecution for sedition, a detective, was an alien enemy, self-confessed forger and ex-convict, who had been in this country but a comparatively brief period, it was prejudicial error to restrict his cross-examination; in such cases a broad liberality of cross-examination should be indulged.

Same—Sedition—Issues—Jury Questions.
11.   In a prosecution under Chapter 11, Laws Extra. Session of 1918, for making seditious utterances, the plea of not guilty put in issue not only the question whether defendant had used the language charged, but whether, if used, it was calculated to bring the form of government, the Constitution, army and navy into contempt, scorn and disrepute—a fact to be determined by the jury.

Same—Sedition—Issues—Definition—Instructions.
12.   Failure of the trial court to define the issues involved in a prosecution for sedition as set forth above (paragraph 11) in its instructions to the jury, or to advise them that it was necessary to a conviction that the state prove beyond a reasonable doubt that defendant uttered the objectionable language and that such language was calculated to have the effect charged in the information, was error, as was also the giving of an instruction that they could find defendant guilty if he had at any time between a certain date and the filing of the information done any of the things condemned by the Sedition Act.

*Appeal from District Court, Lewis and Clark County; R. Lee Word, Judge.*

TONY DIEDTMAN was convicted of sedition, and from the judgment and an order denying his motion for a new trial he appeals. Reversed and remanded.

*Mr. Henry C. Smith,* for Appellant, submitted a brief and argued the cause orally.

The information does not state, and the prosecution did not prove, facts sufficient to constitute a public offense. The language attributed to the defendant was not seditious. (*State v. Kahn,* 56 Mont. 108, 182 Pac. 107; *Schenck* v. *United States,* 249 U. S. 47, 63 L. Ed. 470, 39 Sup. Ct. Rep. 247; *Frohwerk*

v. *United States,* 249 U. S. 204, 63 L. Ed. 561, 39 Sup. Ct. Rep. 249; *Debs* v. *United States,* 249 U. S. 211, 63 L. Ed. 566, 39 Sup. Ct. Rep. 252; *State* v. *Griffith,* 56 Mont. 241, 184 Pac. 219; *State* v. *Wolf,* 56 Mont. 493, 185 Pac. 556; *Rex* v. *Trainer, Alberta,* 27 Canadian Crim. Cas. 232.)

An attempt was made by the state to give the witness Von Waldru a character for truth, honesty and veracity, in advance of his testimony and before his character had been impeached. This was reversible error. (*Morgan* v. *State,* 88 Ala. 223, 6 South. 761; *Hamilton* v. *Conyers,* 28 Ga. 276; *Magee* v. *People,* 139 Ill. 138, 28 N. E. 1077; *Clackner* v. *State,* 33 Ind. 412; Starkie on Evidence, 8th Am. ed. 222; *State* v. *Thomas,* 78 Mo. 327; 5 Am. & Eng. Ency. of Law, 2d ed., p. 852; Rev. Codes, secs. 8026, 9482.)

The defendant was tried twice on the same information; the jury in the first trial disagreed and were discharged in the absence of the defendant. At the opening of the second trial the defendant interposed a plea of "once in jeopardy." In instructing the jury the court directed them to find a verdict for the state upon this plea. It should have directed it to find the issue in favor of the defendant, and to acquit him. (Const., sec. 16, Art. III; 12 Cyc. 270; *Maden* v. *Emmons,* 83 Ind. 331; *State* v. *Wilson,* 50 Ind. 487, 19 Am. Rep. 719; *Cook* v. *State,* 60 Ala. 39, 31 Am. Rep. 31; *State* v. *Sommers,* 60 Minn. 90, 61 N. W. 907.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for the State, submitted a brief; *Mr. Woody* argued the cause orally.

In order to permit the introduction of testimony showing the good character and reputation of a witness, it is not necessary that such character and reputation should be directly assailed or attacked by the other side by witnesses testifying that such character or reputation is bad, but such attack may be made by cross-examination of the witness by means of the substance of questions and the manner of propounding them,

and when so attacked and assailed the party introducing such witness may then introduce testimony to show that the character or reputation of such witness is good (40 Cyc. 2643; *State* v. *Fruge,* 44 La. Ann. 165, 10 South. 621; *Warfield* v. *Louisville & N. Ry. Co.,* 104 Tenn. 74, 78 Am. St. Rep. 911, 55 S. W. 304; *Harris* v. *State,* 49 Tex. Cr. 338, 94 S. W. 227; *La Follette Coal etc. Co.* v. *Minton,* 117 Tenn. 415, 11 L. R. A. (n. s.) 478, 101 S. W. 178; *Chesapeake & Ohio Ry. Co.* v. *Fortune,* 107 Va. 412, 59 S. E. 1095; *Wick* v. *Baldwin,* 51 Ohio St. 51, 36 N. E. 671) ; and bringing out on cross-examination that a witness has been convicted of a felony is such an attack on the character and reputation of a witness as will justify the introduction of evidence to sustain his character or reputation for truth, honesty and veracity. (40 Cyc. 2644; *Gertz* v. *Fitchburg Ry. Co.,* 137 Mass. 77, 50 Am. Rep. 285; *People* v. *Amanacus,* 50 Cal. 233; *Derrick* v. *Wallace,* 217 N. Y. 520, 112 N. E. 440; *Kraimer* v. *State,* 117 Wis. 350, 93 N. W. 1097; *Missouri, K. & T. Ry. Co.* v. *Dumas* (Tex. Civ.), 93 S. W. 493; *Missouri, K. & T. Ry. Co.* v. *Adams,* 42 Tex. Civ. 274, 114 S. W. 453; *Shields* v. *Conway,* 133 Ky. 35, 117 S. W. 340.)

It is probable that the testimony may not have been proper at the time it was introduced. But no objection was made because introduced out of order,—in fact, counsel for defendant expressly stated that no objection was made to the order of testimony, but merely to its competency. Having thus waived any objection to its introduction by reason of its being out of order, the cross-examination of the witness Von Waldru, when he was placed on the stand, rendered the testimony of these two witnesses proper and competent to sustain the character and reputation of the witness. Counsel for defendant by his own examination of Von Waldru cured any error the court may have committed in permitting this testimony to be introduced. (*Butte Consol. Min. Co.* v. *Barker,* 35 Mont. 327, 89 Pac. 302, 90 Pac. 177; *State* v. *Dumphy* (Mont.), 187 Pac. 897; 4 Corpus Juris, 815, 816.)

If defendant had not waived his right to be present at the time the jury was discharged, it is possible that his plea of "once in jeopardy" might be sustained, although the authorities do not uniformly so hold, but it clearly appears from the minutes that the defendant waived his right to be present, consequently there is no merit in such plea. (*People* v. *Smalling,* 94 Cal. 112, 29 Pac. 421; *State* v. *White,* 19 Kan. 445, 27 Am. Rep. 137; *State* v. *Vaughan,* 29 Iowa, 286; *Varnes* v. *State,* 20 Tex. App. 107; *People* v. *Greene,* 100 Cal. 140, 34 Pac. 630; *Frank* v. *Mangum,* 237 U. S. 309, 62 L. Ed. ——, 35 Sup. Ct. Rep. 582; *Garland* v. *Washington,* 232 U. S. 642–645, 58 L. Ed. 772, 34 Sup. Ct. Rep. 456 [see, also, Rose's U. S. Notes] ; *Rex* v. *Richardson,* [1913] 1 K. B. 395; 8 R. C. L., Crim. Law, secs. 148, 150; 16 C. J., Crim. Law, sec. 2568, p. 1095.)

## Opinion—PER CURIAM.

By an information filed in the district court of Lewis and Clark county on May 31, 1918, the defendant was charged with the crime of sedition. Upon his first trial the jury failed to agree upon a verdict. The second trial resulted in a verdict of guilty, with a recommendation to the mercy of the court. The defendant was sentenced to imprisonment in the penitentiary for a term of not less than ten years nor more than twenty years, and has appealed from the judgment and from an order denying his motion for a new trial. There are forty-seven assignments of error, but the contentions made upon some of them have been determined adversely to defendant in sedition cases recently decided. The other assignments may be considered in groups.

1. Henry Latch, a juryman, was examined on his *voir dire* by [1, 2] the county attorney at some considerable length, when the court interposed with the remark that, "if counsel will challenge this juror, I will sustain the challenge." The suggestion was availed of, the juror challenged and excused, and exception was taken to the remark of the court, as well as to

the ruling. There was not any intimation contained in the evidence that the juror was disqualified; on the contrary, he had shown himself possessed of the statutory qualifications for jury service. Neither do we think that the record discloses sufficient ground for challenge for cause; but, even if it did, any ground for such challenge may be waived, and is waived unless availed of at the proper time, and in this instance, if the county attorney had not seen fit to interpose a challenge for cause, the competency of the juror to sit in the trial of the cause could not be questioned. To all intents and purposes, the action of the court amounted to the exercise of a peremptory challenge by it—a right which the court does not possess. (16 R. C. L. 253.) If the court can, of its own motion, excuse one juror without cause, it can excuse a dozen, or, in other words, it can so far pick the jury in advance of the exercise of the peremptory challenges as to compel the defendant to submit to trial before a jury satisfactory to the court, with the only alternative to him to make use of his peremptory challenges among jurors all of whom are equally objectionable.

The statute prescribes the method of selecting a jury, [3] including the challenges and the mode of their exercise, and neither the court nor the parties can select it in any other manner. To admit of any substantial departure from the statutory method would, in effect, nullify the statute itself. In *People* v. *McQuade,* 110 N. Y. 284, 1 L. R. A. 273, 18 N. E. 156, it is said: "The legal right of a defendant may be violated as well by excluding competent jurors as by admitting incompetent ones. He is entitled in all cases to a fair and impartial jury, but he is also entitled to insist that the jury shall be selected according to methods established with a view to secure a just and impartial administration of the jury system." To the same effect are *Sullivan* v. *State,* 102 Ala. 135, 48 Am. St. Rep. 22, 15 South. 264; *Van Blaricum* v. *People,* 16 Ill. 364, 63 Am. Dec. 316; *Welch* v. *Tribune Pub. Co.,* 83 Mich. 661, 21 Am. St. Rep. 629, 11 L. R. A. 233, 47 N. W. 562.

But the error was made more manifest by the manner of the court than by the ruling itself. The remark, considered in connection with the testimony given by the juror, must have led the remaining jurors to believe that the court entertained prejudice against any venireman who manifested a friendly disposition toward the defendant, even though no such prejudice was entertained in fact.

We approve the holding of this court in *Territory* v. *Roberts,* 9 Mont. 12, 22 Pac. 132; but the facts upon which that case was decided differ materially from the facts of the instant case. In that case the juror excused was not a citizen of the United States, and upon his *voir dire* examination testified that he had formed an opinion as to the guilt or innocence of the accused. He was challenged by the prosecution and the challenge allowed. The court did not go further than to hold that "the appellant was not injured by the exclusion of the juror."

2. The county attorney first called as witnesses John Berkin [4, 5] and Thomas Topping, and interrogated them concerning their acquaintanceship with one Eberhard Von Waldru, whose name was indorsed upon the information as a witness for the state. Each witness testified that he knew the reputation of Von Waldru for truth, honesty and integrity in the neighborhood where he resided, and that it was good. Over the most vigorous objection of defendant's counsel, Topping was then permitted to testify that the Department of Justice at Washington and the attorney general of the United States had investigated Von Waldru's record, and that they had passed favorably upon it.

Section 8026, Revised Codes, prohibits the introduction of supporting evidence of the good character of a witness until his character has been first impeached, unless his character is in issue; but assuming that an objection to the order of proof was waived—and it was waived as to one of the witnesses at least—or that error may not be predicated upon the court's rulings admitting this character evidence before Von Waldru had testified, the only evidence admissible under any conceiv-

able circumstances was evidence of Von Waldru's general reputation in the neighborhood where he lived. (*Silver Bow M. & M. Co.* v. *Lowry,* 6 Mont. 288, 12 Pac. 652.) The evidence that the Department of Justice had investigated Von Waldru's record and had passed favorably upon it was the veriest hearsay, and its admission violated the most elementary rules of the law of evidence.

That it was error to admit this evidence is not open to controversy, and the only question for determination is: Was the error a material one under the circumstances? The rule is [6] now firmly established in this jurisdiction that no judgment shall be reversed for technical errors or defects appearing in the record, which do not affect the substantial rights of the complaining party. There is no hard-and-fast rule by which to determine whether a particular error shall be classed as harmful or harmless. Every case must be determined upon its own peculiar facts and circumstances. What are the circumstances of this case which reflect upon the question?

There was no one present when the alleged seditious remarks were made, but Von Waldru and the defendant, and therefore the state was compelled to rely upon Von Waldru's testimony alone to establish the fact that the words were spoken. Von Waldru admitted that he was an alien enemy, a former officer in the German army, a former convict, who had completed his term in the penitentiary at Deer Lodge about the middle of November, 1917. The necessity of bolstering up Von Waldru's testimony was apparent, and appreciated fully by the county attorney; but neither Berkin nor Topping had known him for a period as long as six months, one-half of which time Von Waldru had spent in Butte, a portion of the remainder in Helena, and the other portion not accounted for. Just how either Berkin or Topping could gain a knowledge of the general reputation of Von Waldru during so short a period, or how Von Waldru could establish a general reputation among the people of a community by such a peripatetic residence, are questions which we need not stop to consider at length. In

*Martin* v. *Corscadden,* 34 Mont. 308, 86 Pac. 33, this court said: "Reputation can be proven only by the testimony of witnesses who, by association and ʲacquaintance in the community where the person whose reputation is in question resides, know what is there said of him, and who can, from such knowledge, express an opinion thereon."

Assuming that Berkin and Topping each was competent to answer the question propounded to him, and that his brief acquaintanceship affected only the weight to be given to his opinion (*Territory* v. *Paul,* 2 Mont. 314), it must be manifest that under these circumstances the jury could not have given much weight to the expressed opinion that Von Waldru's reputation for truth, honesty and integrity was good. The defendant denied categorically that he ever made any of the statements attributed to him by Von Waldru and produced several witnesses, each of whom testified to his good reputation; but notwithstanding these facts, and the fact that Von Waldru was a self-confessed forger and an ex-convict, out of the penitentiary only eight months before he gave his testimony upon the trial of this case, the jury were led to say by their verdict that beyond a reasonable doubt the defendant had used the words as Von Waldru had testified that he did. There must have been some consideration which led the jury to this conclusion, other than Von Waldru's testimony standing alone. It could not have been the sustaining testimony of Berkin and Topping, for the opinion of neither could have had much weight, under the meager showing of the facts upon which it was based. But it is easily conceivable that a jury of laymen would be impressed profoundly by the favorable findings of the Department of Justice at Washington and the attorney general, after an investigation into Von Waldru's history, and we think that it is fairly inferable from this record that the verdict rests largely, if not altogether, upon the support which Von Waldru's reputation received from this hearsay testimony; at any rate, it cannot be said that the error in admitting it was without prejudice.

3. A witness, Reiss, called by the defendant, testified upon
[7] his direct examination that defendant's reputation for
honesty and integrity was good. Upon cross-examination, the
county attorney was permitted, over objection, to inquire of the
witness whether he had not on a previous occasion, or on pre-
vious occasions, used language indicating his pro-German
sympathies. The witness denied the implication, and upon
rebuttal the state was permitted to introduce a witness to im-
peach Reiss by testimony that he had used the language at-
tributed to him in the county attorney's questions. The error
in the court's rulings is manifest. Reiss was not on trial,
and, if he had used the language, it could not reflect in the least
upon the guilt or innocence of Diedtman. It is elementary
that a witness cannot be impeached upon a collateral matter
brought out on cross-examination. (*Bullard* v. *Smith,* 28
Mont. 387, 72 Pac. 761.) The rule is stated in Wharton's Crim-
inal Evidence, section 484, as follows: "When a witness is
cross-examined on any irrelevant matter, or any matter col-
lateral to the issue, his answers are conclusive, and he cannot
be subsequently contradicted on those matters by the party
seeking to impeach him."

The test to be applied in this instance to determine whether
[8] the matter was collateral is this: Would the county at-
torney have been entitled to prove that Reiss made the state-
ments as a part of the state's case in chief? That he would
not is manifest. This subject has received the consideration
of this court in the recent case of *State* v. *Smith,* 57 Mont. 349,
188 Pac. 644, and a like ruling was condemned.

4. It appeared from the testimony of Von Waldru that he
[9] made notes at the time of Diedtman's statement, and
soon thereafter extended these notes in a memorandum which
he produced upon the trial. During the course of his exam-
ination he stated repeatedly that, in order to give the language
employed by Diedtman, it was necessary for him to use the
memorandum. At the conclusion of the evidence counsel for

the defendant requested the court to give the following instruction: "If you find that the witness Von Waldru cannot recollect the particular words used by the defendant on April 26, 1918, and requires his memorandum thereof in order to testify thereto, then I charge you that such evidence should be received with caution." The request was refused, no instruction upon the subject was given, and error is predicated upon the ruling. The instruction is in harmony with the provisions of section 8020, Revised Codes. That statute but crystallizes rules of evidence recognized generally by the text-writers and applied by the courts of this country for a century before the statute was adopted. It recognizes two classes of subjects to which the rules are applicable. In the first class is the witness who, by referring to his memorandum, has his memory quickened so that he is able to testify from his actual recollection. The second class includes the witness who undertakes to testify to facts, not because of his independent recollection of them, but relying for his confidence in the assumed correctness of the memorandum itself. (*Davis & Whitaker* v. *Field,* 56 Vt. 426). Recognizing the possibility of error in the memorandum, and the fact that the opposite party is practically precluded from testing its accuracy, the statute has wisely declared that the testimony of a witness of this latter class shall be received by the jury with caution. Whether the witness Von Waldru belonged to the one class or the other was, under the circumstances, a question for the jury to determine, and if they had found that he belonged to the second class, the right of the defendant to have the jury instructed to receive his testimony with caution was absolute, and the refusal of the instruction was error. When it is recalled, as heretofore stated, that the state relied altogether upon Von Waldru's testimony to prove that the statements were made by the defendant, and that it was deemed necessary by the county attorney to bolster up that testimony, even before it was given, by evidence of Von Waldru's good reputation, notwithstanding his previous history,

the error in refusing the cautionary instruction is but emphasized.

5. Errors are predicated upon rulings of the court restricting [10] defendant's cross-examination of the witness Von Waldru. The assignments upon this subject are too numerous to be treated separately. We think the court erred to defendant's prejudice. Von Waldru was a detective employed for hire to ferret out violations of the sedition statute. He had been in America but a comparatively brief period, and defendant's only means of ascertaining his credibility, or lack of it, was by cross-examination, and a broad liberality in this respect should have been indulged. In *State* v. *Whitworth,* 47 Mont. 424, 133 Pac. 364, this court said: "The purpose of trials of issues of fact is to bring out the whole truth, and to that end the right of cross-examination must be liberally interpreted and freely exercised." The language of the court in *State* v. *Wakely,* 43 Mont. 427, 117 Pac. 95, is particularly pertinent here. It was there said: "We recognize the duty of trial judges to allow the utmost latitude on cross-examination, especially in cases like this, where the question of the guilt or innocence of a citizen depends entirely upon the credit to be given to witnesses hired to detect violators of the statute."

6. Finally, and aside from every other consideration, the [11, 12] record discloses that the case was tried throughout upon an entirely erroneous theory of the statute defining sedition. The court must have proceeded upon the theory that, if the defendant used the language set forth in the information, he was guilty. But this does not follow as of course. The language may have been used, even in time of war, under such circumstances that no crime would have been committed. As observed by this court in the case of *State* v. *Smith,* 57 Mont. 563, 190 Pac. 107, our Sedition Act in its general scope and purpose is not unlike the federal espionage law, and concerning a prosecution under that Act the supreme court of the United States said: "The question in every case is whether

the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent.'' (*Schenck* v. *United States,* 249 U. S. 47, 63 L. Ed. 470, 39 Sup. Ct. Rep. 247.)

The information in this instance charges that the language used by the defendant was *calculated* to bring the form of government, the Constitution, the soldiers and sailors, the flag and the uniform into contempt, scorn, contumely and disrepute. This was a necessary allegation under the subdivision of the statute here involved. The defendant's plea of not guilty put that allegation in issue, and devolved upon the prosecution the burden of proving it by competent evidence, beyond a reasonable doubt. Whether the language, if used, was calculated to have the effect imputed to it in the information, was a question of fact to be determined by the jury. (*State* v. *Kahn,* 56 Mont. 108, 182 Pac. 107.) The court did not give any instruction defining the particular issues involved in this case. Nowhere were the jury told that it was necessary to a conviction that the state prove beyond a reasonable doubt that the defendant had used the language set forth in the information, nor were the jury instructed that they must further find that the language so set forth, if used by the defendant, was calculated to bring the form of government of the United States, the Constitution, the soldiers or sailors, the flag or uniform into contempt, scorn, contumely or disrepute; but, on the contrary, the court gave instruction No. 4, under which the jury were authorized to find the defendant guilty if the evidence established beyond a reasonable doubt that he had at any time between February 22, 1918, and May 31, 1918, the date of filing the information, done any of the acts or things condemned by the statute defining sedition, without reference to the particular charge contained in the information. This question also was considered in the case of *State* v. *Smith,* above, and need not be elaborated any further.

For the reasons given, the judgment and order are reversed, and the cause is remanded to the district court of Lewis and Clark county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.