## STATE, RESPONDENT, *v.* RITZ, APPELLANT.

(No. 5,068.)

(Submitted September 26, 1922.  Decided November 25, 1922.)

[211 Pac. 298.]

*Criminal Law — Manufacturing Intoxicating Liquor — Accomplices—Corroborating Evidence—Sufficiency—Cross-examination—Improper Restriction—Appeal and Error.*

Criminal Law—Accomplices—Corroborating Evidence.
  1. An accomplice need not be corroborated as to every material fact to which he testifies, nor is it necessary that the corroborative testimony be sufficient to make a *prima facie* case against the defendant.

Same—Accomplices—Corroborating Evidence—Sufficiency.
  2. Evidence corroborative of that given by an accomplice need not be direct, but may be circumstantial, the statute (sec. 11988, Rev. Codes 1921) being satisfied if the independent evidence tends to connect the accused with the commission of the crime of which he is charged.

Same—Trial—Cross-examination of Accomplice—Great Latitude Allowable.
  3. The right of cross-examination is a valuable and substantial one which the courts should endeavor to extend rather than restrict, and very great latitude should be allowed in the cross-examination of an accomplice.

---

1. Convicting on the testimony of an accomplice, see notes in 71 Am. Dec. 673; 98 Am. St. Rep. 158.
3. Extent to which cross-examination is permissible in case of hostility or ill will of witness, see note in **Ann. Cas.** 1914B, 537.

Same—Accomplice—Promise of Immunity—Improper Restriction of Cross-examination.

4. *Held*, under the above rule (par. 3), that refusal to permit counsel for defendant charged with a violation of the liquor law to ask an accomplice on cross-examination whether he expected to be tried on a like charge pending against him or whether any promise of immunity had been made to him for testifying in behalf of the state, was error.

Same — Accomplice — Impeachment — Hostility to Defendant — Cross-examination—Improper Restriction.

5. *Held*, that while refusal to permit a letter written by an accomplice which contained nothing to contradict the testimony given by him, to be introduced in evidence on his cross-examination was technically correct, yet .it also ' containing statements that he had been confined in prison for a felony and showing hostility to defendant, it was error to refuse permission to counsel for defendant to refer to its contents in cross-examining the witness for impeachment purposes and to show hostility to defendant.

Same—Appeal from Judgment—Refusal of New Trial—Error not Reviewable.

6. On appeal from the judgment of conviction only, an assignment of error for denial of defendant's motion for a new trial cannot be considered.

*Appeal from District Court, Dawson County; Frank P. Leiper, Judge.*

AUGUST RITZ was convicted of unlawfully manufacturing intoxicating liquors, and appeals. Reversed and remanded.

*Messrs. Hurley & O'Neill,* for Appellant, submitted a brief; *Mr. C. C. Hurley* argued the cause orally.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, for the State, submitted a brief; *Mr. Foot* argued the cause orally.

HONORABLE JEREMIAH J. LYNCH, District Judge, sitting in place of MR. JUSTICE FARR, disqualified, delivered the opinion of the court.

In an information filed in the district court it is alleged that the defendant, in the county of Dawson, state of Montana, on the eleventh day of December, 1921, did willfully and unlawfully manufacture, possess, transport, sell and barter intoxicating liquor. The action came regularly on for trial on the seventeenth day of March, 1922, and at the conclusion of the

state's case the attorneys prosecuting elected to stand on the charge of unlawfully manufacturing intoxicating liquor. The defendant was found guilty, and sentenced to a term of four months in the county jail and to pay a fine of $1,000. He has appealed from the judgment.

Jack Dell, the principal witness for the plaintiff, testified that he was a coal miner and farm hand by occupation, and first met the defendant in the latter part of August, 1921, in Richey, Montana. The defendant at that time hired him to work for one John Hensey, who owned a ranch some distance from the town, for the sum of $3 per day, and afterwards drove him to Hensey's place, where he remained until harvesting was over. On or about the 7th of October, when his term of service with Hensey expired, the defendant engaged him to work on his ranch, which was close to that of Hensey, for the sum of $100 a month. On the ranch stood a dwelling-house, consisting of two stories and a basement. Entrance to the basement could be gained through an outside door or by way of the kitchen on the first floor. One Peter Willert looked after the ranch for the defendant, and with his wife and two children occupied the house. He also took up his residence therein, and spent the first few days husking corn and repairing fences under the direction of Willert. On the third or fourth day of his employment the defendant, who lived in Richey, proposed that he turn his attention to the making of "moonshine whisky for him, and offered to pay him $200 a month for such service. He had had no experience in that kind of work, and accepted with some reluctance. The defendant gave him $22.04 with which to purchase a still, and told him to order it from a certain Philadelphia firm. He then directed him to put the basement in order, remove a cook-stove from the bunkhouse thereto, and connect it with the chimney. There were empty barrels in the basement at the time, and at the defendant's suggestion he carried some others that were lying around the yard into it. The defendant ordered him to get rye from the granary, and at intervals brought sugar and yeast from town in his Buick car. He gave him information

as to the proper way to make "moonshine whisky," mentioning rye, sugar, yeast and water as the ingredients. The still arrived about October 30, was installed without delay, and from then on to December 11 he distilled "moonshine whisky" therewith. At the instance of the defendant and with his money he bought a supply of coloring matter and a tester to determine the alcoholic strength of the liquor. The defendant came to the place in his car two or three times a week, and brought back in jugs the product of the still. Once, between October 30 and December 11, he remained at the farmhouse overnight and drank rather freely. On the 23d of November he met the defendant, who instructed him to go into the basement and stay there while one Ralph Levengood carried a 100-pound sack of sugar from his car into the kitchen, and to remove it to the basement so soon as he had left. Through the basement window he saw Levengood take the sugar into the house. He put three or four gallons of the moonshine in his trunk because the defendant would not pay him for his work. The trunk was locked and stored in the bunkhouse. Some time afterward, and before December 7, he told the defendant what he had done. About the 7th of December the defendant ordered him to dismantle the still, remove anything incriminating from the place, and "clear out," as he feared he himself would get into trouble, and then took three half-gallons of the liquor and placed them in his car. From the car he came back to the bunkhouse. Next day he found his trunk broken open, and the moonshine gone. He disregarded the order which the defendant gave him, and on December 11, because he had refused to pay him for his services, led the sheriff and under-sheriff of Dawson county by prearrangement to the basement, where they found the still in operation and seized everything of evidentiary value. He was then placed under arrest and put in jail.

A. H. Helland, a witness for the plaintiff, testified that in the months of November and December, 1921, he was sheriff of Dawson county. On the eleventh day of December the witness Dell accompanied him, the under-sheriff, and one Henry

[65 Mont. 180.]

Holler from the home of the latter to the basement of the Ritz house, a distance of about one and one-half miles. They found therein a cook-stove, with fire in it; a still, containing mash, on the stove; a number of barrels, some of which contained mash, and one of which contained water; a bottle under the spout of the still; a quantity of coloring matter; and a tester. A liquid of some kind was being distilled from the mash in the still. He carried away the still, a quantity of the mash, the bottle with its contents, the coloring matter, and the tester. The bottle was subsequently turned over to one E. L. Hayes for chemical analysis.

Elmer Martinson, the under-sheriff and a witness for the plaintiff, testified substantially to the same state of facts as did Mr. Helland.

E. L. Hayes, a witness for the plaintiff, testified that he analyzed the liquid in the bottle which Mr. Helland gave him, and found that it was fifty-three per cent alcohol by volume.

Peter Willert, testifying in behalf of the plaintiff, said that the defendant was his brother-in-law; that he and his family lived for the last two years on his farm about seven miles southwest of Richey; that Jack Dell was on the farm during all of November and a part of December; that he knew Dell had a still in operation in the basement; that he met the defendant in his automobile on the road between Richey and the farm on an average of twice a week while the still was running; and that he saw him in the house just before Thanksgiving and on the 4th and 7th of December.

Mrs. Petra Willert, testifying in behalf of the state, said that she was the wife of Peter Willert, and lived with him and their two children on the August Ritz ranch; that Jack Dell lived there in November and a part of December; that during that time the defendant came to the house once or twice a week; that the last time he came before Dell left the place she saw him go into the basement and afterwards come out with three jugs in his hands and go in the direction of his car, which was near the barn, and that on the day following this

occurrence she saw Dell's trunk in the bunkhouse, and it was broken open.

R. P. Levengood, testifying in behalf of the state, said that on November 22 he took a stallion and bull from Richey to the ranch for the defendant, and at his direction carried a 100-pound sack of sugar from his car into the kitchen of the farmhouse.

The defendant was a witness in his own behalf, and contradicted the testimony of Dell in several important particulars. He said, among other things, that he did not hire Dell to work for Hensey or himself; that shortly before Dell got through at Hensey's he suggested to him that he be allowed to reside in his farmhouse later on while out of work, as he expected to locate on a homestead near by some time during the winter; that he consented, provided it was satisfactory to Mrs. Willert, and that soon after Dell moved to the house; that he went from Richey to his ranch once and occasionally twice a week while Dell was there, but did not always enter the house; that he knew nothing about the still being in the basement until a day or two before Thanksgiving, when Dell led him from the kitchen to where it was; that the still was not running then; that he remonstrated with Dell, informed him he did not have his permission "to do anything like that," ordered him to get off the place and remove the "stuff," but took one drink of "moonshine whisky" out of a bottle before leaving; that Dell promised to do as directed; that he was at the house on the 4th of December, but did not go into the basement; that Dell rode back to Richey with him, and on being asked on the way if he had removed the "outfit" and "cleaned everything up," he replied in the affirmative; that he was at the house again on the 7th of December, found Dell lying drunk in the basement, and saw three half-gallon jugs of moonshine there, which he took upstairs and afterwards destroyed near the barn; that later in the day when Dell came up to the kitchen he again ordered him to remove the still; that he did not break into Dell's trunk or remove the liquor therefrom; that he did not at any time take any liquor away from

the ranch; that he never gave Dell money with which to buy the still or anything else connected with the making of moonshine; that he never asked Dell to do any work for him but once, when he requested him to bring an armful of wood into the kitchen; that of the five barrels he saw in the basement only one belonged to him—where the others came from he could not say; that he did not return to the ranch between the seventh and eleventh days of December, and that the sack of sugar was for the use of the Willert family during the winter months.

Witnesses besides those mentioned testified for one side or the other, but we do not deem it necessary to a proper understanding of the case or the questions of law involved to embody any part of their testimony in this opinion.

Counsel for appellant argue with force and earnestness that [1, 2] the testimony of Dell, a confessed accomplice, was not corroborated by other evidence to the extent required by section 11988, Revised Codes of 1921, and hence that the trial court erred in denying the motion of appellant for a directed verdict in his favor. It is not essential that the accomplice be corroborated as to every material fact to which he testifies (*State* v. *Slothower*, 56 Mont. 230, 182 Pac. 270; *State* v. *Stevenson*, 26 Mont. 332, 67 Pac. 1001; *Territory* v. *Corbett*, 3 Mont. 50; 16 C. J. 704; 1 R. C. L. 168), or that the corroborative evidence must of itself be sufficient to make a *prima facie* case against the defendant (*State* v. *Slothower*, above: *State* v. *Stevenson*, above; *State* v. *Calder*, 23 Mont. 504, 59 Pac. 903; *State* v. *Geddes*, 22 Mont. 68, 55 Pac. 919; *State* v. *Lawlor*, 28 Minn. 216, 9 N. W. 698; 16 C. J. 711; 1 Ency. of Evidence, 104; 1 R. C. L. 170) or connect him with the commission of the offense charged (*State* v. *Slothower*, above; *State* v. *Stevenson*, above; *State* v. *Calder*, above; *State* v. *Geddes*, above; 16 C. J. 705). The statute is satisfied if the independent evidence *tends* to connect him with the commission of the crime of which he is accused. (*State* v. *Slothower*, above; *State* v. *Stevenson*, above; *State* v. *Calder*, above; *State* v. *Geddes*, above; 16 C. J. 711; 1 R. C. L. 169; 1 Ency.

of Evidence, 104.) Furthermore, the evidence need not be direct; it may consist of proof of facts and circumstances. (16 C. J. 705, 711; 1 Ency. of Evidence, 108; 3 Ency. of Evidence, 104, 105; 1 R. C. L. 171.) In our judgment, therefore, there was enough corroboration of Dell to carry the case to the jury. We may add that the subject under discussion was fully and carefully considered by this court in the recently decided case of *State* v. *Bolton, ante,* p. 74, 212 Pac. 504, and a similar conclusion reached. This disposes also of the contention that the verdict is contrary to the evidence.

On cross-examination Dell was asked these questions: "Do [3, 4] you ever expect to be or do you expect that you ever will be tried?" "Have any promises been made to you as to what punishment you will receive, if any, after you have testified in this case as a witness?" Counsel for the state objected to each of them in turn, and the court sustained the objection. Errors are predicated on these rulings. We think the court erred to the prejudice of the defendant. The right of cross-examination, as has been often said, is a valuable and substantial right, and the courts should incline to extend, rather than to restrict it. Cross-examination is the most potent weapon known to the law for separating falsehood from truth, hearsay from actual knowledge, things imaginary from things real, opinion from fact, and inference from recollection, and for testing the intelligence, fairness, memory, truthfulness, accuracy, honesty, and power of observation of the witness. It has become a truism in the legal profession that "The testimony of a witness is not stronger than it is made by his cross-examination." (*Kipp* v. *Silverman,* 25 Mont. 296, 64 Pac. 884; *State* v. *Broadbent,* 27 Mont. 342, 71 Pac. 1; *Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805; *State* v. *Biggs,* 45 Mont. 400, 123 Pac. 410; *Cuerth* v. *Arbogast,* 48 Mont. 209, 136 Pac. 383; *Herzig* v. *Sandberg,* 54 Mont. 538, 172 Pac. 132; *State* v. *Diedtman,* 58 Mont. 13, 190 Pac. 117; *Budd* v. *Northern Pacific R. Co.,* 59 Mont. 238, 195 Pac. 1109; 2 Moore on Facts, sec. 1274; 5 Jones on Evidence, sec. 821; 2 Wigmore on Evidence, sec. 1367; 40 Cyc. 2480–2483.)

Very great latitude indeed ought to be allowed in the cross-examination of an accomplice, and to that end the cross-examiner should be permitted to test his credibility by subjecting him to a most searching inquiry as to any promise of immunity or leniency made him, or any hope or expectation he may entertain of escaping punishment. A less liberal rule would be calculated to place the defendant, to some extent, at least, at the mercy of a witness who may have compelling reasons for desiring his conviction. (*State* v. *Geddes, supra; State* v. *Kent,* 4 N. D. 577, 27 L. R. A. 686, 62 N. W. 631; *People* v. *Hare,* 57 Mich. 505, 24 N. W. 843; *Gill* v. *State,* 59 Ark. 422, 27 S. W. 598; *State* v. *Ritter,* 238 Mo. 381, 231 S. W. 606; *People* v. *Langtree,* 64 Cal. 256, 30 Pac. 813; *People* v. *Schmitz,* 7 Cal. App. 330, 15 L. R. A. (n. s.) 717, 94 Pac. 407, 419; *People* v. *McKinney,* 267 Ill. 454, 108 N. E. 652; *Stevens* v. *People,* 215 Ill. 593, 74 N. E. 786; *People* v. *Moore,* 181 N. Y. 524, 73 N. E. 1129; *Lee* v. *State,* 21 Ohio St. 151; *Tollifson* v. *People,* 49 Colo. 219, 112 Pac. 794; 16 C. J. 694, 695; 40 Cyc. 2511; 2 Wigmore on Evidence, 1097; 1 Wharton's Criminal Evidence, 933; 2 Elliott on Evidence, 185; 3 Ency. of Evidence, 849–955; 5 Jones on Evidence, sec. 828.)

On cross-examination Dell was further asked whether or not [5] he had ever been confined in the penitentiary at Leavenworth, Kansas, for the commission of a felony. He answered in the negative. Counsel then handed him a letter dated January 17, 1922, and addressed to Peter Willert, and inquired if it was in his handwriting. He answered that it was. The letter, a part of which was evidently written in facetious vein, stated in substance that the judge had sentenced him to serve from ten to forty-five years in the Leavenworth, Kansas, penitentiary and to pay a fine of twenty-five cents, that he heard Ritz told somebody it had already cost him $2,000 to beat his hired man out of $300, that it would cost Ritz a couple of thousand dollars more before he was through with him, and that some day he would come up to Willert's to get his clothes before going to Kansas. Following the admission of authorship, the letter was offered in evidence. An objection by coun-.

sel for the plaintiff was sustained by the court. Appellant complains of this ruling. There being nothing in the letter that contradicted any testimony Dell had so far given, the ruling was technically correct. The court thereafter refused to allow counsel for the defendant to embody any of its contents in questions addressed to Dell. In doing so the court unduly restricted the right of cross-examination, as appellant claims. The letter was a legitimate subject of inquiry, as it showed hostility toward the defendant on the part of Dell, and could be used to impeach him if at any time in the course of the cross-examination he should answer that he was never convicted of a felony. (*State* v. *Whitworth*, 47 Mont. 424, 133 Pac. 364; 2 Ency. of Evidence, 408, 409; 3 Ency. of Evidence, 849–851; 40 Cyc. 2489; 5 Jones on Evidence, sec. 828.)

Appellant complains of the rulings of the court in refusing to give two instructions relating to the manner in which the accomplice should be corroborated. The instructions are of doubtful soundness, to say the least, and were calculated, if given, to seriously mislead the jury, and it was proper to refuse them. Moreover, instruction No. 18, which the court gave, correctly states the rule applicable to the corroboration of an accomplice.

Error is assigned because the court denied defendant's motion for a new trial. As the appeal is from the judgment only, the point cannot be considered. (Secs. 12107 and 12126, Rev. Codes 1921; *State* v. *Beesskove*, 34 Mont. 41, 85 Pac. 376; *State* v. *Brown*, 38 Mont. 309, 99 Pac. 954; *State* v. *Francis*, 58 Mont. 659, 194 Pac. 304; *State* v. *O'Brien*, 18 Mont. 1, 43 Pac. 1091, 44 Pac. 399.)

We have carefully considered appellant's other assignments of error, but find they are without merit.

The judgment is reversed and the cause is remanded to the district court of Dawson county for a new trial.

*Reversed and remanded.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.